UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
STEPHEN A. MILLER,

        Plaintiff,

    -v-                                No.  12 Civ. 4122 (LTS)(JCF)

PACIFIC INVESTMENT
MANAGEMENT CO. LLC et al.,

        Defendants.
------------------------------------------------------x

MEMORANDUM ORDER

       Pro se Plaintiff Stephen A. Miller ("Plaintiff") alleges that Defendants Pacific

Investment Management Company, LLC ("PIMCO LLC"), PIMCO Funds, CME Group, Inc.

("CMEG"), Mohamed A. El-Erian, Stephen A. Rodosky, Kathleen Cronin, and Joseph P.

Adamczyk (collectively "Defendants") engaged in market manipulation involving Treasury

futures, in violation of the Commodities Exchange Act ("CEA"), 7 U.S.C. § 1 et seq.

Defendants PIMCO LLC, PIMCO Funds and CMEG have each filed a motion, pursuant to

Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(1)[1] and 12(b)(6) and 28 U.S.C. § 1915, to

dismiss Plaintiff's Amended Complaint with prejudice and without leave to appeal.  The Court

has jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 7 U.S.C. § 25.  The Amended

Complaint was filed after earlier, similar motions to dismiss Plaintiff's initial Complaint.  In his

responses to those earlier motions, Plaintiff demanded that the Court undertake an investigation

to substantiate his allegations.  In his Amended Complaint, Plaintiff offers to educate the Court

regarding the operation of the securities derivatives market and renews his assertions that

---

      [1]      CMEG does not bring its motion pursuant to either Federal Rule of Civil Procedure
12(b)(1) or 28 U.S.C. § 1915.

investigation of reports and other documentation of Defendants' alleged wrongdoing are

warranted.  Plaintiff has filed no papers in opposition to the instant motions.  The Court has

considered thoroughly the Defendants' submissions and the Amended Complaint.  For the

following reasons, Defendants' motions to dismiss the Amended Complaint are granted in their

entirety.

BACKGROUND

Plaintiff alleges, inter alia, that Defendants, through "90 consecutive,

concentrated trades" sought to artificially raise the prices of three separate Treasury futures

contracts (30 Year bond, 10 year note, and 5 year note) from July to September 2010.  (Am.

Compl. at 9.)  According to Plaintiff, Defendants intended "to artificially raise fixed income

prices (lower interest rates) to gouge higher fees from PIMCO shareholders."  (Id.)  Plaintiff

bases his allegations of Defendants' market manipulation on the fact that, PIMCO's CEO,

Defendant Mohamed A. El-Erian, allegedly appeared on television claiming that there would be

"a 'new normal' price for the 10 year U.S. Treasury notes" that he predicted would drop from a

yield range of 5.5% to 3.5% to a yield of 2.5%.  (Id. at 9-10.)  Plaintiff avers that PIMCO LLC,

an investment advisor and commodity pool operator and trading advisor, caused the "new

normal" to occur by using a computer program to bid repeatedly on Treasury futures contracts

every time the Dow Jones Industrial Average ("Dow") dropped thirty points or more, which had

the effect of artificially increasing the price for Treasury futures contracts during the relevant

period.  (Id. at 10.)  Plaintiff further alleges that PIMCO stole money from its shareholders to

pay for a case settlement in the Northern District of Illinois (id. at 15); that PIMCO Funds,

combined "false statements with 90 specific timed computer bidding to create artificial prices

that made the repeated false statements . . . come true" (id.); and that the PIMCO Funds "shares

collapsed in synch with the collapse of the Treasury Securities and futures prices until February 2011" (id. at 17).

Plaintiff asserts that he lost $26,800 from transactions in Treasury futures and options contracts, although he does not provide basic details like information on the products he traded, how the transactions were effected, or when the trading occurred.  (Id. at 8, 20.)  Plaintiff also alleges that he lost "the potential to earn $104,000," but does not provide any basis for this assertion.  (Id.)  Upon realizing his own trading losses, Plaintiff allegedly performed an "audit," analyzing the publicly available trading data.  (Id. at 11.)  Because the public data included the price and time of the trades but not the trading parties, Plaintiff's audit could not identify who made the trades in question or whether such trades were made by more than one party.  (Id. at 16.)

According to the Plaintiff, when he provided CMEG with the information that he had uncovered, CMEG should have "report[ed] the gargantuan positions to the CFTC [U.S. Commodity Futures Trading Commission] and the DOJ [Department of Justice] to fulfill and comply with the (SRO) [Self Reporting Organization] status."  (Id. at 12.)  Plaintiff further avers that "[t]he enormous size of the single trader bidding prices higher could not be missed by the surveillance of the CME group," and that the scheme was "cover[ed] up by the CME" (id. at 12, 20), while individual CMEG Defendants, Ms. Cronin and Mr. Adamczyk, "refused to do their job creating a conflict of interest" (id at 16).

DISCUSSION

A plaintiff's failure to oppose a motion to dismiss does not alone merit dismissal of a complaint.  See Goldberg v. Danaher, 599 F.3d 181, 183-84 (2d Cir. 2010).  "[T]he sufficiency of a complaint is a matter of law that the court is capable of determining based on its

own reading of the pleading and knowledge of the law.  If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a [motion to dismiss] does not warrant dismissal." McCall v. Pataki, 232 F.3d 321, 323 (2d Cir. 2000).

Under Federal Rule of Civil Procedure 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff "has the burden of proving, by a preponderance of the evidence," that subject matter jurisdiction exists.  Makarova, 201 F.3d at 113.

In deciding a Rule 12(b)(6) motion, the Court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007), see also Ashcroft v. Iqbal, 556 U.S. 662 (2009).  "To survive a motion to dismiss [pursuant to Rule 12(b)(6)], the complaint must set out only enough facts to state a claim to relief that is plausible on its face."  Hollander v. Copacabana Nightclub, 624 F.3d 30, 32 (2d Cir. 2010), citing Iqbal, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  Complaints prepared by pro se plaintiffs should be held to "less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations omitted), and interpreted "to raise the strongest arguments that they suggest."  Knight v. Keane, 247 F. Supp. 2d 379, 383 (S.D.N.Y. 2002) (citation and emphasis omitted).  Nonetheless, if not supported by plausible facts, pleadings prepared by pro se parties should still be dismissed. Harris v. Mills, 572 F.3d 66, 73 (2d Cir. 2009).

<u>PIMCO LLC's and PIMCO Funds' Motions to Dismiss</u>

PIMCO LLC and PIMCO Funds allege that the Amended Complaint should be dismissed for lack of subject matter jurisdiction because Plaintiff does not have standing under the CEA to bring this suit.[2]  To assert a claim under Section 22 of the CEA, 7 U.S.C. § 25, the Plaintiff must have either (1) received trading advice from the Defendants for a fee; (2) traded through the Defendants or deposited money with them for a trade; (3) purchased through or sold to the Defendants or placed an order for a purchase or sale with them for specified options or commodities; or (4) purchased through or sold to the Defendants a contract in which the price of such contract, or the price of the commodity underlying the contract, was manipulated.  <u>Klein & Co. Futures, Inc. v. Board of Trade of City of New York</u>, 464 F.3d 255, 260 (2d Cir. 2006). These are "the only circumstances under which a private litigant may assert a private right of action for violations of the CEA."  <u>Id.</u> at 259.  Here, Plaintiff alleges that he "lost $26,800 from [his] account," that he lost the opportunity to earn "at least $104,000" (Am. Compl. at 8), and that he suffered his loss "as a result of defendants' manipulation of the price of the aforementioned Treasury futures and options contracts" (<u>id.</u> at 20).  Plaintiff also alleges that "all persons and entities that purchased between September 2010 or December 2010 . . . are eligible to be in the class."  (<u>Id.</u> at 11.)[3]  Plaintiff does not allege that he engaged in any of the four types of specific

---

[2]    The Court finds the Defendants' arguments that Plaintiff alternatively does not have standing to assert a CEA claim under the "irreducible constitutional minimum standard" required by Article III of the U.S. Constitution – plaintiff suffered an injury-in-fact to a "legally protected interest," there is a causal connection between the injury and the conduct, and it is likely that the injury will be reduced by a favorable decision – to be unavailing.  <u>See Lujan v. Defenders of Wildlife</u>, 504 US. 555, 560 (1992). Plaintiff has asserted that he lost thousands of dollars, that this was caused by Defendants' market manipulation, and if there is a favorable decision for the Plaintiff, the injury will likely be redressed.

[3]    Plaintiff's vague references to a potential class do not change the analysis since this is not a class action and it is "well settled that the standing requirement cannot be

transactions with the Defendants, as outlined in <u>Klein & Co. Futures</u>, so as to sufficiently assert standing under the CEA.

However, even if Plaintiff had standing to bring his claims under the CEA against PIMCO LLC and PIMCO Funds, his claims still would not survive the PIMCO Defendants' 12(b)(6) motions to dismiss.  When a complaint for market manipulation sounds in fraud, like the one alleged here, the plaintiff must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  <u>In re Amaranth Natural Gas Commodities Litig.</u>, 587 F. Supp. 2d 513, 535 (S.D.N.Y. 2008) (internal citation omitted).  To state a claim for market manipulation, Plaintiff must plausibly allege that: "(1) the defendant possessed the ability to influence market prices; (2) an artificial price existed; (3) the defendant caused the artificial price; and (4) the defendant intended to do so."  <u>U.S. Commodity Futures Trading Com'n v. Parnon Energy, Inc.</u>, 875 F. Supp. 2d 233, 244 (S.D.N.Y. 2012).  "In situations where multiple defendants are alleged to have committed fraud, the complaint must specifically allege the fraud perpetrated by each defendant and 'lumping' all defendants together does not satisfy the particularity requirement."  <u>In re Crude Oil Commodity Litig.</u>, No. 06 Civ. 6677(NRB), 2007 WL 1946553, at * 6 (S.D.N.Y. Jun. 28, 2007) (citation omitted).

"Whether Defendants exercised market power is fact-intens[ive], and courts reserve dismissal on this issue for pleadings containing only bare and conclusory allegations."  <u>U.S. Commodity Futures Trading Com'n</u>, 875 F. Supp. 2d at 245 (internal citations omitted).  <u>See</u>, <u>e.g.</u>, <u>Crosswood Magazine Inc. v. Times Books</u>, No. 96 Civ. 4550(SJ), 1997 WL 227998, at *2 (E.D.N.Y. May 5, 1997) ("Plaintiffs . . . have pleaded no facts indicating that [defendant] has

---

dispensed with by styling the complaint as a class action."  <u>In re Direxion Shares ETF Trust</u>, 279 F.R.D. 221, 230 (S.D.N.Y. 2012) (internal citation omitted).

the power to fix prices or exclude competition in the alleged relevant market").  Here, Plaintiff

alleges that PIMCO LLC rigged the entire Treasury market, but does not include any details

about how this was done or how PIMCO LLC had the power to do this.  Plaintiff also fails to

plead any facts showing that PIMCO LLC's relatively small trading position could have affected

the market to the degree alleged here.

Moreover, to allege sufficiently the existence of an artificial price, the Amended

Complaint must contend that Treasury futures were selling at "a price which does not reflect

basic forces of supply and demand." In re Soybean Futures Litig., 892 F. Supp. 1025, 1044

(N.D. Ill. 1995).  Here, Plaintiff has not sufficiently pled that the market price did not reflect the

forces of supply and demand.  Plaintiff also has not plausibly alleged that Defendants caused an

artificial price. See In re Soybean, 892 F. Supp at 1045.  Plaintiff offers the conclusory

allegation that PIMCO LLC operated an unidentified computer program to drive up prices, but

does not provide any further explanation of this program.  Plaintiff cannot request that the Court

conduct its own factual investigation or order discovery to determine if his claim is viable.  It is

well-settled that "a litigant has to state a claim before he or she is entitled to discovery."

Bridgewater v. Taylor, 745 F. Supp. 2d 355, 358 (S.D.N.Y. 2010).

To support an inference that PIMCO LLC, PIMCO Funds or the PIMCO

individual defendants intended to manipulate the Treasury futures market or possessed the

ability to do so, the Amended Complaint would have to allege manipulative conduct that was

"calculated to produce a price distortion." U.S. Commodity Futures Trading Com'n v. Hunter,

No. 07 Civ. 6682(BSJ)(FM), 2012 WL 297838, at *1 (Jan. 31, 2012) (internal quotation marks

and citation omitted).  "If a trading pattern is supported by a legitimate economic rationale, it

cannot be the basis for liability under the CEA." In re Amaranth Nat. Gas. Litig., 587 F. Supp.

2d at 534-35.  Plaintiff appears to infer an intent to act fraudulently from PIMCO LLC's trading

strategy, stating that "[o]nly a lunatic or an imbecile would purposely bid prices higher without

[an] illegal intention."  (Am. Compl. at 2.)  These conclusory allegations are not sufficient to

establish intent on the part of PIMCO LLC or the individual PIMCO Defendants.

Plaintiff's allegations, which are insufficient to link PIMCO LLC or the

individual PIMCO defendants to the alleged market manipulation, contain even less factual

content with regards to PIMCO Funds.  Read in the light most favorable to the Plaintiff, the

Amended Complaint alleges that PIMCO stole money from its shareholders to settle a case, that

PIMCO Funds combined false statements with computer bidding to create artificial prices, and

that this decreased the prices of PIMCO shares.  These conclusory allegations, without further

factual support, are also insufficient to state a CEA claim against PIMCO Funds.  See, e.g., In re

Crude Oil, 2007 WL 1946553, at *7 (dismissing plaintiff's market manipulation claims when

plaintiff had not pled any "specific instance in which defendants engaged in a manipulative

manner").  Accordingly, PIMCO LLC and PIMCO Funds' motions to dismiss the Amended

Complaint are granted.  Plaintiff also asserts that PIMCO's payment of a substantial sum in

settlement of earlier related litigation is conclusory of its liability here.  Such an inference is

precluded as a matter of law.  See Fed. R. Evid. 408 (furnishing of consideration to compromise

a claim is inadmissible to prove the validity of a disputed claim).

CMEG's Motion to Dismiss

Plaintiff's principal allegation against CMEG is that CMEG did not report

Defendants' alleged market manipulation to the CFTC and the DOJ and that the individual

CMEG Defendants "refused to do their job" when confronted with Plaintiff's findings.  (Am.

Compl. at 16.)  To the extent that Plaintiff is attempting to assert a claim pursuant to Section 22

of the CEA against the CMEG Defendants, such a claim fails because CMEG is not a

commodities exchange and thus does not have self-regulatory responsibilities.[4]  Therefore,

CMEG cannot be held liable for failing to discipline or report the PIMCO Defendants.

Furthermore, a plaintiff seeking to enforce liability under Section 22 of the CEA must plead facts

sufficient to show that the defendant exchange acted in bad faith, which can be supported by

alleging "first that the exchange acted or failed to act with knowledge; and second, that the

exchange's action or inaction was the result of an ulterior motive."  Ryder Energy Distribution

Corp v. Merrill Lynch Commodities Inc., 748 F.2d 774, 780 (2d Cir. 1984).  Plaintiff does not

allege that the CMEG Defendants were aware of the alleged manipulative conduct before it

occurred or that they refused to stop it – only that they failed to discipline the PIMCO

Defendants after the alleged manipulation had occurred.  Accordingly, CMEG's motion to

dismiss Plaintiff's Amended Complaint is granted.

                    Dismissal with Prejudice

            "It is well established that leave to amend a complaint need not be granted when

amendment would be futile."  Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003).  Further, leave to

amend need not be granted in the face of prior attempts to cure pleading deficiencies or undue

delay.  Foman v. Davis, 371 U.S. 178, 182 (1962); see, e.g.,  Olkey v. Hyperion 1999 Term Trust.

Inc., 98 F.3d 2, 9 (2d Cir. 1996) (affirming dismissal with prejudice because more detailed

allegations would not have saved the flawed complaint).  The Court finds that any amendment to

---

[4]         See http://www.cftc.gov/IndustryOversight/TradingOrganizations/index.htm,
            providing a list of exchanges registered as designated contract markets under the
            CEA, which includes the Chicago Mercantile Exchange, Inc., but not the CMEG (last
            visited April 22, 2013).  Courts may take judicial notice of this type of publicly
            available material and consider it on a motion to dismiss.  See In re Merrill Lynch &
            Co., Inc., 273 F. Supp. 2d 352, 356-57 (S.D.N.Y. 2003).

the already amended complaint would be futile, and thus, Plaintiff's Amended Complaint is dismissed with prejudice and without leave to amend. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from the Memorandum Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

CONCLUSION

For the foregoing reasons, the Defendants' motions to dismiss Plaintiff's Amended Complaint are granted in their entirety. Plaintiff's Amended Complaint is dismissed with prejudice without leave to renewal and in forma pauperis status is denied for the purpose of an appeal. This Memorandum Order resolves docket entries numbers 62, 67 and 70. The Clerk of Court is hereby requested to enter judgment dismissing the Amended Complaint and to close this case.

SO ORDERED.

Dated: New York, New York
        April 23, 2013


                                    _____
                                              /S
                                    LAURA TAYLOR SWAIN
                                    United States District Judge



Copy mailed to:
Stephen Miller
83 Waldorf Avenue
Bridgeport, CT 06605